[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
The plaintiff wife, Lynn Galovich, commenced this action for a dissolution of the parties' marriage by writ and complaint returnable to this court August 9, 1994. She also sought alimony, an assignment of the defendant husband's estate pursuant to General Statutes § 46b-81 and other relief as on file. The defendant appeared, but filed no answer or cross complaint. Both parties were represented by counsel throughout the proceedings and testified at trial. The plaintiff produced two other witnesses who testified.
Each spouse submitted financial affidavits and written claims for relief. Documentary materials were also introduced into evidence and counsel made oral argument.
From the evidence, I find the following facts.
The couple was married on October 30, 1971, in Lebanon, CT Page 3968 Connecticut. The wife has resided continuously in this state for at least one year before the date of the complaint, July 14, 1994. There is one child, issue of this marriage, who reached his majority in 1991. No other children were born to the wife since the date of the marriage. Neither spouse is a recipient of public assistance, all statutory stays have expired, and the court has jurisdiction.
The wife is 46 years old, a high school graduate and in fair health. She suffers from asthma and anxiety. She takes medication for both conditions. She works full time as a transportation supervisor overseeing 14 employees. She began with her present employer about seven years ago at a starting salary of $7 per hour as a dispatcher/driver. She now earns $545[1] per week gross, $414 per week net. She is provided with health insurance and has a deferred compensation/pension plan in which her employer matches her contribution to a maximum of five (5%) percent of her salary.
The husband is 49 years of age, a high school graduate and in good health. He worked for New England Typographic Service, Inc., a typesetting and desktop publishing firm, for over 17 years until early 1992 when he was laid off. He rose to the position of general manager of advertising sales, and in his last year of employment, he earned $800 per week gross plus commissions. He then collected unemployment compensation of $298 per week for about a year. Now he works for a friend as a car driving instructor; he grosses $305 per week and nets $258 per week. He is not working up to his earning capacity, but does have an opportunity to obtain a partnership interest in his friend's driving school business by means of `sweat equity'.
The major cause of the destruction of the parties' marriage can be traced to the defendant's excessive drinking and depression in about 1983. He left the home for about a year. The wife commenced an action for dissolution, which was not prosecuted. After he returned home, the marriage was largely platonic. The couple did not communicate well and had divergent interests. This marriage has clearly broken down irretrievably.
The husband controlled the family finances and was largely responsible for the creation of substantial credit card obligations, which were paid by means of a second mortgage financing of $23,600 in 1991, which netted the parties $18,864. The second mortgage is at an interest rate of sixteen and CT Page 3969 one-quarter (16 1/4%) percent per annum.
Shortly before this action was commenced, the husband dissipated almost $13,000 taken from his former employer's profit sharing plan. There was no credible explanation for what the credit card expenditures or the profit sharing plan funds were devoted to. The wife concedes that she was responsible for about $2,000 of the credit card debt and disclaimed any knowledge of the genesis of the remainder. I find her testimony credible in this regard.
The parties have modest assets. These include the jointly-owned marital dwelling, 46 Scenic Road, Lebanon, Connecticut, which the parties stipulated has a value of $72,500. It was purchased in 1971 for $19,000. The outstanding balances of the first and second mortgages are approximately $24,000, and when past due real estate taxes of about $1,800 are added to the encumbrances, there is a net equity of $46,700. The wife reports an automobile worth $2,800, cash in banks of $275, and stock and her pension plan totalling $1,400. Against these assets, she reports $6,853 in liabilities of which $2,000 is for attorney's fees.
The husband reports no vehicle on his financial affidavit, personal property of $1,000, cash in banks of $100, and a life insurance policy with cash value of $40. Against these assets, he reports $3,810 in liabilities.
The wife worked as a part-time school bus driver almost continuously during the first 17 years of the marriage, except for about 1 1/2 years which she took off after the birth of the child. She adopted the job schedule of a school bus driver to be available for the child.
The husband's monetary contributions to the marriage, at least until his layoff in 1992, exceeded those of the wife. He also made improvements to the house. The wife was responsible for the homemaking and child rearing. The husband's credit card use and dissipation of his profit sharing plan had a significant adverse effect on the couple's financial condition.
The parties agreed on a disposition of their tangible personal property, household furniture and furnishings, and the court ordered that the pendente lite orders relating to the payment of the home mortgages and real estate taxes continue for CT Page 3970 the month of April, 1995. This order shall survive this decree.
I have considered all of the criteria in General Statutes §§ 46b-81 and 46b-82, in the light of the evidence and my findings. I have also considered the taxable implications of the financial awards set forth.
Accordingly, a decree shall enter dissolving the marriage of the parties on the ground of irretrievable breakdown.
It is further ordered that:
(1) No alimony is awarded to either party except as set forth in paragraph 5 below.
(2) All right, title and interest to the following real and personal property shall be transferred to and vest in the wife: the marital dwelling, 46 Scenic Road, Lebanon, Connecticut, subject to the mortgages and real estate taxes thereon, which she shall pay and save the husband harmless therefrom; the 1987 Chevrolet automobile; her Travelers stock; the bank accounts shown on her financial affidavit; her TIAF/CREF plan; and the items of personal property set out to her on the parties' joint Exhibit 1.
(3) All right, title and interest in the following property shall be transferred to and vest in the husband: the life insurance policy cash value and cash shown on his financial affidavit; the personal property, shown on joint Exhibit 1 and Schedule A annexed to defendant's proposed orders.
(4) The wife shall execute and deliver to the husband a promissory note in the amount of $9,500 secured by third mortgage on the marital dwelling. The principal balance of said note, together with interest at the rate of three (3%) percent per annum shall be due and payable on the first to occur of the following events: death or remarriage of the wife; her sale or transfer of the mortgaged premises; or April 1, 1999. The note and mortgage shall contain a provision for attorney's fees and an increase in the interest rate to eight (8%) percent per annum in the event of default. Said mortgage shall automatically be subordinated to a first mortgage not to exceed $30,000 in the event wife refinances the present encumbrances.
(5) The wife shall cooperate with husband's effort to remain CT Page 3971 covered under her employment-related health insurance plan, under applicable law; she shall pay toward the premium the sum of $50 per month for a period of one year. This payment shall terminate upon the husband's death, remarriage, cohabitation, or, if health insurance is available through his employment, and said payments shall be deductible by wife and taxable to husband.
(6) Each party shall pay his or her own attorney's fees and the liabilities shown on their respective financial affidavits.
(7) The husband shall vacate the marital dwelling by 5 p.m., April 30, 1995, and the wife shall have exclusive possession thereof thereafter.
(8) The parties shall execute and exchange all documents necessary or incidental to effect the orders herein and also transfer all personal property within thirty (30) days of the date of this decree.
Teller, J.